IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Airlink Communications, Inc., et al., | Case No. 3:10 CV 2296 |
| Plaintiffs, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Owl Wireless, LLC, | |
| Defendant. | |

### INTRODUCTION

In this dispute, Plaintiff Page Plus of Atlanta, Inc., seeks damages from Defendant Owl Wireless, LLC on a variety of theories, including breach of contract and fraud. Now pending before the Court is Defendant's Motion for Partial Summary Judgment (Doc. No. 74); Plaintiff opposed (Doc. No. 75); Defendant replied (Doc. No. 77); and Plaintiff filed a surreply (Doc. No. 87). For the reasons that follow, Defendant's Motion is granted.

### BACKGROUND

The parties have a long history, including previous litigation before this Court, but for present purposes the facts are straight-forward. This case involves a dispute between two companies in the prepaid cellular phone airtime industry over the alleged breach of, and misrepresentations made in connection with, a 2008 Distributor Agreement ("Agreement"). Plaintiff claims Defendant breached the Agreement and intentionally misrepresented to and concealed from Plaintiff information regarding Defendant's pricing. Plaintiff alleges Defendant undertook these nefarious acts to drive Plaintiff out

of the prepaid cellular airtime market.  Plaintiff seeks damages for the recovery of the difference between what Plaintiff believed it should have been charged under the Agreement and the price actually charged by Defendant, as well as lost profits.

The Agreement includes a section addressing limitations of damages and warranties ("Section 11"), which is at the heart of the present dispute.  Section 11 (Doc. No. 74-4 at 6) reads in full:

> 11. **Limitations on Warranties and Liabilities**
>
> The parties intend that the limitation on liability, warranty and damage awards provided for in this Agreement will apply to the fullest extent allowed by law.  Some jurisdictions do not allow the exclusion of certain warranties or the waiver, limitation or exclusion of liability for punitive, incidental or consequential damages, or for intentional or willful conduct in some circumstances.  To the extent that any of these limitations are not permitted by applicable law, they will not apply to Distributor.
>
> **Warranties As to Phone Cards.**  OWL MAKES NO, AND HEREBY DISCLAIMS ANY, WARRANTY, EITHER EXPRESS OR IMPLIED (INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE) OR STATUTORY.  IT IS INTENDED BY THE PARTIES THAT THIS SECTION SHALL ALSO APPLY TO DISTRIBUTOR AND DISTRIBUTOR'S AGENTS, SUBAGENTS AND SUB-DEALERS.
>
> **Limitations on Liabilities.** OWL SHALL NOT BE LIABLE FOR ANY SPECIAL, CONSEQUENTIAL, INCIDENTAL OR EXEMPLARY DAMAGES, WHETHER THE DAMAGES RELATE TO BREACH OF CONTRACT OR WARRANTY, TORT (INCLUDING NEGLIGENCE AND STRICT LIABILITY), OR OTHER RIGHTS INCLUDING, BUT NOT LIMITED TO DAMAGES ATTRIBUTABLE TO LOSS OF PROFITS OR REVENUES, LOSS OF USE OF THE PHONE CARDS OR THE HANDSETS, COST OF SUBSTITUTING PHONE CARDS OR PINS OR HANDSETS AND CLAIMS OF DISTRIBUTOR OR DISTRIBUTOR'S SUB-DEALERS OR USERS. DISTRIBUTOR ASSUMES ALL RISK AND LIABILITY FOR LOSS, DAMAGE OR INJURY TO PERSONS OR PROPERTY ARISING OUT OF ITS USE OR POSSESSION OF THE PHONE CARDS SOLD HEREUNDER.

Based on Section 11, Defendant moved for partial summary judgment arguing the section precluded recovery for certain damages claimed by Plaintiff, including lost profits.  Defendant also

argues Plaintiff's tort claims should be dismissed because these claims are simply breach of contract claims by another name: they are based on duties imposed by the Agreement, seek the same damages, and therefore cannot form the basis of a tort claim under Ohio law.

## DISCUSSION

### Standard of Review

Pursuant to Federal Civil Rule 56(a), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." When considering a motion for summary judgment, the court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

### Section 11 of the Agreement

Defendant's first and primary argument rests on the limitation of liability clause found in Section 11 of the Agreement (quoted above), which allegedly excludes "any special, consequential, incidental or exemplary damages . . . ."

This Court must construe Section 11 "so as to give effect to the intent of the parties, and that intent is presumed as a matter of law to be fully revealed in the language the parties choose to incorporate into the agreement." *Adelman v. Timman*, 117 Ohio App. 3d 544, 550 (1996). The Court must look to the plain language of the contract, *Latina v. Woodpath Dev. Co.*, 57 Ohio St. 3d 212, 214 (1991), and only go beyond the plain language of the agreement to determine the rights and

3

obligations of the parties if it is ambiguous, *Int'l Ass'n of Machinists & Aerospace Workers, Lodge No. 1194 v. Garwood Indus., Inc.*, 368 F. Supp. 357, 363 (N.D. Ohio 1973).

The parties have two competing interpretations of this provision. Defendant argues lost profits are quintessential consequential damages, as in those damages that "although not normally arising from a breach in the ordinary course of things, nevertheless arise because of some special circumstances surrounding the actual contract at issue and were known to the breaching party." *Conneaut Metalcasters v. Emco Wheaton, Inc. (In re Conneaut Metalcasters)*, 1997 U.S. App. LEXIS 23780, at *12–13 (6th Cir. 1997).

Plaintiff's interpretation of Section 11 is much more limited. Plaintiff argues that Section 11 "limit[s] Owl's exposure to liability from claims arising out of the use of the prepaid cellular phone cards and handsets" (Doc. No. 75 at 8–10). Plaintiff points out that the paragraph Defendant bases its argument on, entitled "Limitations on Liabilities," is a subsection of "Limitations on Warranties and Liabilities" and follows a paragraph entitled "Warranties As to Phone Cards." Plaintiff also notes the limitation of damages paragraph indicates Defendant is specifically limited to damages "including, but not limited to damages attributable to . . . loss of use of the phone cards or handsets, cost of substituting phone cards or PINS or handsets." According to Plaintiff, this establishes the limitation of damages section "relates solely to the liabilities traveling with use of the prepaid cellular phone products" (Doc. No. 75 at 9).

Defendant has the better argument here. Section 11 certainly addresses both warranties and limitation of liability, as well as mentions phone cards and handsets. However, the mere mention of handsets and phone cards does not necessitate the narrow reading Plaintiff advocates. Section 11 states that Defendant will not be liable for certain damages "including, *but not limited to*" those

4

"attributable to loss of profits or revenues, loss of use of the phone cards or handsets, cost of substituting phone cards or PINS or handsets . . ." (Doc. No. 74-4 at 6). The paragraph does not state Defendant is limited "only to" damages attributable to certain sources. Each phrase appears to be an example of the type of damages claim for which Defendant is not responsible, and not an exhaustive list. The limitation Plaintiff wants to give this paragraph simply does not exist.

### Lost Profits as Actual Damages

The parties agree Section 11 only limits special, consequential, incidental or exemplary damages, and not actual or direct damages. Where they part, however, is how to characterize "lost profits." Plaintiff argues it is entitled to recover lost profits as "actual" or "direct" damages (Doc. No. 75 at 10–14). Direct or actual damages are defined as "real, substantial and just damages, or the amount awarded to a complainant in compensation for his actual and real loss or injury." *Whitaker v. M.T. Automotive, Inc.*, 855 N.E.2d 825, 831 (Ohio 2006). Plaintiff argues the damages it suffered as lost profits flow directly from Defendant's breach of the Agreement and tortious conduct and therefore are not barred by Section 11.

However, lost profits are generally not considered direct damages. *See Mead Corp. v. McNally-Pittsburgh Mfg. Corp.*, 654 F.2d 1197, 1209 n.17 (6th Cir. 1981) ("as pointed out by White & Summers, Uniform Commercial Code 318-21 (1972), consequential damages usually encompass lost profits expected under contracts between the aggrieved party and third parties, and other expenses not incurred in order to cure the immediate defect in performance").

Furthermore, when damages claimed by a plaintiff are contingent on collateral third-party agreements -- as is the case here -- those damages are consequential, not direct. *See, e.g.*, *Penncro Assoc. v. Sprint Spectrum, L.P.*, 499 F.3d 1151 (10th Cir. 2007); *Optimal Interiors, LLC v. The Hon*

*Co.*, 2011 U.S. Dist. LEXIS 36589, at *53 n.18 (S.D. Iowa 2011); *Topp, Inc. v. Uniden Am. Corp.*, 2007 U.S. Dist. LEXIS, at *8–10 (S.D. Fla. 2007).

Plaintiff's direct damages would be the benefit it expected to receive under the contract but did not, which is the difference between the price it believed it should have paid for goods and services under the Agreement and the price it actually paid. Plaintiff's lost profits, if any, were contingent upon third-party agreements and none of the alleged lost profits were directly tied to the Distributor Agreement. Accordingly, even if lost profits can sometimes be characterized as direct rather than consequential damages, that is not the case here.

**Intentional Conduct**

Plaintiff next argues Section 11 does not apply to claims based upon willful and wanton misconduct (Doc. No. 75 at 14–16), citing several cases holding that while limitations of liability clauses can bar negligence claims against a tortfeasor, they cannot preclude claims based on intentional conduct. *See, e.g.*, *Clanin v. North Am. Bulk Trans., Inc.*, 2003 WL 1119145, at *6 (S.D. Ohio 2003); *Sanfillipo v. Rarden*, 24 Ohio App. 3d 164, 168 (Ohio Ct. App. 1985).

Defendant does not dispute this general proposition, but counters that in Ohio, "[i]t is no tort to carry a feeling of malice toward a person; it is no tort to breach a contract, regardless of motive." *Battista v. Lebanon Trolly Ass'n*, 538 F.2d 111, 117 (6th Cir. 1976). To the extent Plaintiff is arguing its contract claims are not barred by Section 11 because it has alleged intentional conduct, that is no reason to find Section 11 inapplicable. Whether a party to a contract breaches the contract or not has nothing to do with intent. *See Battista*, 538 F.2d at 117. A contract is breached, or it is not, independent of the parties' intentions.

6

**Unconscionability**

Plaintiff alternatively argues that enforcement of Section 11 would be unconscionable (Doc. No. 75 at 17). In Ohio, "although an exculpatory clause to limit one's liability due to negligence may be valid and enforceable, . . . such a clause is ineffective where the party seeking protection failed to exercise any care whatsoever, where there was willful or wanton misconduct, or where the clause is against important public policy concerns, unconscionable, or vague and ambiguous." *Ohio Cas. Ins. Co. v. D & J Distrib. & Mfg.*, 2009 Ohio 3806, ¶ 36 (Ohio Ct. App. 2009) (citing *Richard A. Berjian, D.O., Inc. v. Ohio Bell Tel. Co.*, 54 Ohio St. 2d 147, 158 (1978)). A party arguing a contract is unconscionable must prove both procedural and substantive unconscionability to succeed. *John Doe v. SexSearch.com*, 502 F. Supp. 2d 719, 734 (N.D. Ohio 2007).

Plaintiff first contends that if the Court adopts Defendant's reading of Section 11, then Plaintiff could not recover for a breach of the Agreement under any set of circumstances. This argument is overblown. Plaintiff can recover its expectation damages (if it proves its case) and Defendant concedes as much. Therefore Plaintiff cannot show substantive unconscionability.

Furthermore, Plaintiff cannot demonstrate procedural unconscionability. Procedural unconscionability involves factors relating to the "relative bargaining position of the contracting parties, e.g., 'age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible, and whether there were alternative sources of supply for the goods in question.'" *Id.* at 734–35 (quoting *Dorsey v. Contemporary Obstetrics & Gynecology, Inc*., 113 Ohio App. 3d 75, 80 (Ohio Ct. App. 1996)). As Defendant points out, both parties are sophisticated business entities that were represented by counsel -- in fact the same counsel representing both parties

7

today -- when they entered into the Agreement. Plaintiff has not demonstrated there was anything unfair about the negotiations entered into by the parties. Accordingly, Plaintiff has failed to demonstrate either procedural or substantive unconscionability.

**Tort Claims**

Defendant also argues Plaintiff's tort claims should be dismissed because (1) the language of Section 11 bars such claims and (2) Plaintiff's tort claims are simply artfully pled allegations for breach of contract. In response, Plaintiff claims that its tort claims are outside the scope of Section 11 (*id.* at 18–19) and independent from its breach of contract claims.

Under Ohio law, " [a] party cannot recover under theories of both fraud and negligence based upon the same course of conduct." *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App. 3d 137, 148 (Ohio Ct. App. 1996) (citing *Tighe v. Diamond*, 149 Ohio St. 520, 525 (1948)). Generally, "the existence of a contract action . . . excludes the opportunity to present the same case as a tort claim." *Textron*, 115 Ohio App. 3d at 151 (quoting *Wolfe v. Continental Cas. Co.*, 647 F.2d 705, 710 (6th Cir. 1981)).

"A tort claim based upon the same actions as those upon which a claim of contract breach is based will exist independently of the contract action only if the breaching party also breaches a duty owed separately from that created by the contract, that is, a duty owed even if no contract existed." *Textron*, 115 Ohio App. 3d at 151(citing *Battista*, 538 F.2d at 117). It must also "include actual damages attributable to the wrongful acts of the alleged tortfeasor which are in addition to those attributable to the breach of the contract." *Id.* (citing *Cincinnati Gas & Elec. v. G.E.*, 656 F. Supp. 49, 63 (1986)). Therefore, Plaintiff must prove both an independent duty *and* independent damages to pursue its contract and tort claims together.

8

Defendant claims Plaintiff has identified neither an independent duty owed to Plaintiff, outside of the contract, nor alleged any damages different from those for breach of contract. Plaintiff contends its claims are different, and offers the following allegations for its breach of contract claim: (1) Defendant failed to honor its pricing obligations; (2) Defendant refused to negotiate in good faith regarding expansion of Plaintiff's territories; and (3) Defendant refused to honor its renewal of the Agreement for an additional one year (Doc. No. 75 at 18).

On the other hand, Plaintiff contends its fraud claims are based on the affidavit of Jim Koval, Defendant's former employee, who outlined a number of actions Defendant took "to put [Plaintiff] out of business, including concealing deals offered to other distributors to enable customers to undercut Plaintiff in the market and opening up territories to other distributors to enable them to compete against [Plaintiff ]and usurp market share" (*id.*). Plaintiff adds that "[w]hile the contract imposed no duties on the part of [Defendant] to refrain from sabotaging [Plaintiff's] business, these actions were directed at injuring [Plaintiff]" (*id.* at 19). All of Plaintiff's claims, based on contract or tort, seek damages for lost profits, sales and customers (Doc. No. 74-5 at 8–9).

Plaintiff has not identified, and this Court cannot find, an independent duty owed to Plaintiff by Defendant upon which fraud or misrepresentation could be based outside of the Agreement. It is unclear why Defendant would have been prevented from concealing deals from Plaintiff about other distributors or enabled other competitors access to a business market without the Agreement. In addition, it is clear Plaintiff is seeking recovery for lost profits, sales and customers for both its fraud and breach of contract claims. Under these circumstances, Plaintiff is prevented from seeking its tort claims. *See Textron*, 115 Ohio App. 3d at 151.

9

**Ohio Consumer Sales Practices Act (Count VI)**

Defendant initially sought dismissal of Count VI of the Complaint, but indicated in its Reply that Plaintiff has agreed to voluntarily dismiss Count VI (see Doc. No. 77 at 1 n.1). Plaintiff acknowledged it is abandoning this theory at the September 6, 2011 telephone status conference. Accordingly, Count VI of the Complaint is dismissed.

## CONCLUSION

For the foregoing reasons, the Court finds that (1) Section 11 is an enforceable limitation of liability clause that limits all of Plaintiff's claimed damages for any special, consequential, incidental or exemplary damages, not just those damages related to handsets, phone cards and PINS; (2) Plaintiff's claim for lost profits is a claim for consequential, not actual, damages; and (3) Plaintiff's tort claims should be dismissed because they are neither based on a duty independent of the Agreement nor seek damages independent and distinct from those sought for Plaintiff's breach of contract claims. Accordingly, Defendant's Motion (Doc. No. 74) is granted.

IT IS SO ORDERED.

       s/ *Jack Zouhary*
    JACK ZOUHARY
    U. S. DISTRICT JUDGE

September 20, 2011